ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
MELANIE D. MORGAN, ESQ.
Nevada Bar No. 8215
JAMIE K. COMBS, ESQ.
Nevada Bar No. 13088
**AKERMAN LLP**
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Telephone:   (702) 634-5000
Facsimile:    (702) 380-8572
Email: ariel.stern@akerman.com
           melanie.morgan@akerman.com
           jamie.combs@akerman.com

*Attorneys for The Bank of New York Mellon f/k/a
The Bank of New York as Trustee for the Holders
of the SAMI II Trust 2006-AR7*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE HOLDERS OF THE SAMI II TRUST 2006-AR7,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY NATIONAL TITLE INSURANCE COMPANY, AS SUCCESSOR TO UNITED CAPITAL TITLE INSURANCE COMPANY; DOES I THROUGH X; AND ROE CORPORATIONS I THROUGH X<br><br>Defendants. | **Case No:** 2:20-cv-2124<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Holders of the SAMI II Trust 2006-AR7 (**BoNYM**) complains as follows:

. . .

. . .

. . .

. . .

55256577;1

**PARTIES AND JURISDICTION**

1. BoNYM is a national banking association.

2. Fidelity National Title Insurance Company is a corporation. Fidelity is successor to United Capital Title Insurance Company, who underwrote the policy of title insurance at issue in this action.

3. BoNYM is the beneficiary of record under a recorded deed of trust encumbering the residential property located at 11080 Kilkerran Court, Las Vegas, Nevada 89141.

4. Fidelity's predecessor underwrote the policy of title insurance that insured the enforceability, priority, and marketability of BoNYM's deed of trust.

5. Does I through X, inclusive, are individuals who may be liable for damages with the named defendants on the allegations set forth in this complaint or may have received fraudulent transfers, which are voidable pursuant to NRS Chapter 112.  BoNYM may seek leave of court to amend this complaint to reflect the true names and identities of the Doe defendants when known.

6. Roe Corporations I through X, inclusive, are corporate entities that may be liable for damages with the named defendants on the allegations set forth in this complaint or may have received fraudulent transfers, which are voidable pursuant to NRS Chapter 112.  BoNYM may seek leave of court to amend this complaint to reflect the true names and identities of the Roe defendants when known.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  The parties are diverse.  BoNYM is a citizen of New York, where its principal offices are located.  Upon information and belief, Fidelity is not a citizen of New York.  The amount in controversy exceeds $75,000 as BoNYM seeks indemnification from a $977,500 title insurance policy.

8. Venue is proper in this court under 28 U.S.C. §1391 because this action concerns real property located in Clark County, Nevada, and the facts and circumstances giving rise to this complaint occurred in Clark County, Nevada.

. . .

. . .

. . .

2

55256577;1

**FACTUAL ALLEGATIONS**

*The Loan*

9. Lois Dorsey obtained a mortgage loan on July 12, 2006 for $850,000.

10. Ms. Dorsey gave a deed of trust Countrywide Bank, N.A. in connection with the loan. The deed of trust was recorded on July 17, 2006 as Document No. 20060717-0004367 in the Clark County Recorder's Office.

11. The deed of trust originally appointed Mortgage Electronic Registration Systems, Inc. (**MERS**) as beneficiary (solely as nominee for Countrywide), and was later assigned to BoNYM.

12. BoNYM is the current beneficiary under the deed of trust.

*The HOA Lien Under the CC&Rs*

13. Royal Highlands Homeowners Association's (**HOA**) recorded its supplemental declaration of covenants, conditions and restrictions (**CC&Rs**) on November 7, 2002 as Clark County, Nevada Instrument No. 20021107-01762, prior to the policy date.

14. Royal Highlands' CC&Rs explain Royal Highlands was created as a limited purpose association under the provisions of sections 82.006 through 82.690 of the Nevada Revised Statutes. Their stated purpose is to identify and establish each owner's maintenance responsibilities and assessment obligations for the common elements and to provide for the maintenance and repair of said common elements within Royal Highlands. The purpose of the assessments levied by Royal Highlands pursuant to the CC&Rs were exclusively to operate, replace, improve, and maintain the common elements and discharge Royal Highlands' obligations under the CC&Rs.

15. The CC&Rs provide under Article 12 "Notwithstanding any other provision of [these CC&Rs], no amendment or violation of [these CC&Rs] shall operate to defeat or render invalid the rights of the Beneficiary under any Deed of Trust upon one (1) or more Lots made in good faith and for value, provided that after the foreclosure of any such Deed of Trust such Lot(s) shall remain subject to [these CC&Rs], as amended."

*HOA Foreclosure*

16. Upon information and belief, Ms. Dorsey failed to pay the HOA all amounts due to it. Alessi & Koenig, LLC (**Alessi**), as agent for the HOA, recorded a notice of delinquent assessment

3

55256577;1

lien on June 3, 2009, claiming a total amount due of $1,496.41.  The lien notice did not identify the superpriority amount—if any—and failed to describe the "deficiency in payment" as required by NRS 116.31162(1)(b)(1).

17. The HOA, through its agent Alessi, recorded a notice of default and election to sell on September 15, 2009, claiming a total amount due of $2,619.84. The notice of default did not identify the superpriority amount—if any—and failed to describe the "deficiency in payment" required by NRS 116.31162(1)(b)(1).

18. The HOA, through its agent Alessi, recorded a notice of trustee's sale on June 14, 2010.  It recorded a second notice of trustee's sale on July 5, 2012, and a third notice on January 7, 2013. None of the notices of sale identified the superpriority amount—if any—and each failed to describe the "deficiency in payment" required by NRS 116.31162(1)(b)(1).

19. In none of the recorded documents, nor in any notice, did the HOA and/or its agent Alessi, specify whether it was foreclosing the superpriority portion of its lien, if any, or on the subpriority portion of its lien.  To the contrary, Alessi took the position that the superpriority component did not spring into existence until after the bank foreclosed on its own deed of trust.

20. In none of the recorded documents, nor in any notice, did the HOA and/or its agent Alessi, specify BoNYM's deed of trust would be extinguished by the HOA's foreclosure.  To the contrary, Alessi took the position that the superpriority component did not spring into existence until after the bank foreclosed on its own deed of trust.

21. In none of the recorded documents, nor in any notice, did the HOA and/or its agent Alessi identify any way by which the beneficiary under the senior deed of trust could satisfy the superpriority portion of the HOA's purported lien.

22. The HOA sale occurred on February 13, 2013. SFR Investments Pool 1, LLC acquired the property for $40,000.  The trustee's deed upon sale was recorded on February 19, 2013.

### *Title Insurance*

23. Fidelity's predecessor, United Capital Title Insurance Company, issued a policy of title insurance for BoNYM's deed of trust for $977,500.  The policy was issued on July 17, 2006 bearing Policy No. A92 210025684.

4

24. The policy insured Countrywide and its "assigns as their interest may appear and [MERS]," which includes BoNYM as the assignee of the deed of trust.

25. The policy insured the marketability and enforceability of the deed of trust, including that the deed of trust would be recorded and placed in first lien position. The policy expressly insured against losses arising out of lack of priority of the deed of trust over the HOA's lien.

26. The policy requires the insured give notice of an adverse claim only if the insured has "actual knowledge" of an adverse claim, not constructive knowledge or notice which may be imputed from public records.

27. The policy required notice of an adverse claim only if the adverse claim might cause loss or damage to BoNYM. Neither BoNYM nor its predecessors had actual knowledge prior to the sale that the HOA lien was superior to the deed of trust or that the sale might cause loss of the deed of trust. To the contrary, Alessi took the position that the superpriority component of an HOA's lien did not spring into existence until after the bank foreclosed on its deed of trust.

28. Liens arising under the CC&Rs for assessments accruing after the policy date are not excepted from coverage.

29. An endorsement to the policy expressly insured BoNYM against any loss or damage from the HOA foreclosure by insuring against: (a) any covenants, conditions or restrictions cutting off, subordinating, or otherwise impairing the deed of trust; or (b) any future violations on the land of any covenants, conditions or restrictions occurring prior to acquisition of title to the estate or interest in the deed of trust by the insured.

30. Another endorsement to the policy expressly insured BoNYM against the priority of the HOA's lien for charges and assessments at date of policy over BoNYM's deed of trust.

31. The CC&Rs were recorded before the deed of trust, which constituted record notice and perfection of the HOA's lien. Enforcement of the CC&Rs impaired, subordinated, and ultimately cut off the deed of trust, which triggered coverage under the endorsements.

32. Ms. Dorsey's failure to pay the HOA assessments after the policy was issued also constituted a future violation under the CC&Rs, triggering coverage under the endorsement.

33. The priority of the perfected HOA lien for charges and assessments under the recorded CC&Rs at date of policy additionally triggered coverage under the endorsements.

34. The lien that was enforced in the February 13, 2013, sale to SFR existed prior to July 17, 2006, as a fully-perfected lien.

*Complaint for Declaratory Relief*

35. BoNYM filed a complaint on August 22, 2016 against SFR seeking to protect the existence and priority of the deed of trust. The case was filed in the United States District Court District of Nevada as Case No. 2:16-cv-1993.

36. SFR filed an answer and counterclaim against BoNYM on November 4, 2016, asserting it purchased the property at the HOA sale free and clear of BoNYM's deed of trust.

37. The district court ruled for SFR on summary judgment on July 30, 2019. BoNYM timely appealed. On August 14, 2020, the Ninth Circuit affirmed judgment in favor of SFR.

38. BoNYM submitted a claim to Fidelity under the policy on August 20, 2020, seeking indemnification related to the title defects.

39. Fidelity denied the claim on September 17, 2020. Fidelity claimed in its denial that its liability was limited to the amount of the super-priority component of the HOA's lien, and sent a check to BoNYM in the amount of $791. Fidelity denied it was obligated to indemnify BoNYM for anything above $791, because it claims BoNYM failed to timely tender a claim to it before the HOA sale, which Fidelity claims prejudiced it.

40. BoNYM disputes it had an obligation to give Fidelity pre-sale notice of the HOA's lien because, among other things, (a) BoNYM did not know the HOA's lien was adverse to the deed of trust, (b) the CC&Rs expressly represented that the HOA's lien was subordinate to the deed of trust and that the HOA would enforce its rights without prejudicing the deed of trust, and (c) Alessi took the position that the superpriority component of an HOA's lien did not spring into existence until after the bank foreclosed on its deed of trust.

41. On information and belief, had BoNYM contacted Fidelity about the foreclosure prior to the sale, Fidelity would not have paid the HOA's lien or taken any other action in response to the communication other than denying the insurance claim.

42. Because any earlier notice would have been futile, Fidelity was not prejudiced by the timing of BoNYM's insurance claim.

43. Fidelity acted with conscious disregard for the rights of its insured.

44. Fidelity caused BoNYM unjust hardship and acted with malice, oppression and in conscious disregard for BoNYM's rights.

45. To date, Fidelity has failed and refused to acknowledge any duty to indemnify or reimburse BoNYM.

46. Fidelity failed to articulate a valid reason to deny coverage under the policy.

47. Fidelity failed to explore in good faith settlement of the claim at any time.

48. Fidelity failed to institute and then follow reasonable policies, practices, and procedures in relation to the handling and adjustment of claims under title policies, including BoNYM's policy for the above-referenced claim.

49. Fidelity gave consideration to its own interests, but did not give equal consideration to the rights and interests of its insured, in reference to the handling of claims for insurance coverage, indemnity, and defense under the policy for BoNYM's claim.

50. Fidelity's acts and omissions in connection with matters of coverage, defense, and indemnity under the policy as set forth in this complaint harmed and prejudiced BoNYM.

51. Fidelity failed to adopt and implement reasonable standards for the processing of claims arising under insurance policies.

52. Fidelity failed to effectuate prompt, fair and equitable settlements of claims under circumstances where it is required to do so.

## FIRST CAUSE OF ACTION

**(Declaratory Judgment as to BoNYM's Title Policy)**

53. BoNYM repeats and re-alleges the preceding paragraphs.

54. There is a real, substantial, and justiciable issue in controversy between the parties with respect to insurance coverage under BoNYM's title policy.

55. Under NRS § 30.010 *et seq.*, NRS § 40.010, and 28 U.S.C. § 2201, this court has the power and authority to declare BoNYM's rights and interests under the policy.

56. A judicial determination and a declaration of the rights and obligations of the parties are necessary and appropriate at this time.

57. BoNYM requests the court declare Fidelity has an obligation under the policy to fully indemnify BoNYM from damages and losses BoNYM sustained as set forth in the insurance claim.

58. BoNYM is entitled to an order of the court declaring, adjudicating, and clarifying the rights and responsibilities of BoNYM and Fidelity, substantially as follows:

> Fidelity has an obligation under the policy to fully indemnify BoNYM for any loss of the deed of trust as a result of the HOA sale.

59. BoNYM was required to retain an attorney to prosecute this action, and is therefore entitled to collect its reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

60. BoNYM repeats and re-alleges the preceding paragraphs.

61. The policy is a contract containing certain valid and enforceable provisions.

62. Fidelity owed a duty, among other things, to indemnify BoNYM for all damages and losses from the HOA foreclosure sale.

63. Fidelity breached its duties under the policy by, among other things, refusing to indemnify BoNYM for all damages and losses from the HOA sale.

64. As a direct and proximate result of such actions and/or failures by Fidelity, BoNYM has incurred damages in excess of $75,000, plus costs and attorneys' fees.

## THIRD CAUSE OF ACTION

### (Bad Faith Breach of Insurance Contract)

65. BoNYM repeats and re-alleges the preceding paragraphs.

66. There exists an implied covenant of good faith and fair dealing in every contract.

67. Where, as here, the relationship between the parties is that of insurer and insured, breach of the implied covenant of good faith and fair dealing constitutes bad faith.

68. Fidelity has tortiously, and in bad faith, breached the implied covenant of good faith and fair dealing by engaging in the conduct alleged herein.

8

55256577;1

69. Fidelity had no reasonable basis to deny or refuse to pay BoNYM's claim.

70. Fidelity had actual or implied awareness that there was no reasonable basis for denying BoNYM's claim.

71. As a direct and proximate result of such actions and/or failures by Fidelity, BoNYM has incurred damages in excess of $75,000, plus costs and attorneys' fees.

72. In view of the acts and omissions alleged herein, Fidelity's conduct has been reckless, willful, malicious, oppressive, and tortious.

## FIFTH CAUSE OF ACTION

### (Violation of Nev. Rev. Stat. § 686A.310)

73. BoNYM repeats and re-alleges the preceding paragraphs.

74. Fidelity misrepresented to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue, including to BoNYM.

75. Fidelity failed to effectuate prompt, fair, and equitable settlements of claims under circumstances where it is required to do so, including for BoNYM's claim.

76. Fidelity's conduct constitutes a violation of NRS § 686A.310, including, the following provisions:

   (a) Misrepresenting to insureds/claimants pertinent facts or insurance policy provisions relating to any coverage at issue.

   (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

   (c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

   (d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

   (e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

   (f) Compelling insureds to institute litigation to recover amounts due under an insurance policy.

55256577;1

(n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

77. As a direct and proximate result of such actions and/or failures by Fidelity, BoNYM has incurred damages in excess of $75,000.

78. In view of the acts and omissions alleged herein, Fidelity's violation of NRS § 686A.310 has been reckless, willful, malicious, oppressive, and tortious.

## JURY TRIAL DEMANDED

BoNYM demands a jury trial on all issues.

## PRAYER FOR RELIEF

WHEREFORE, BoNYM prays for the following:

(a) An order of the Court declaring, adjudging, and proclaiming the rights of BoNYM and the responsibilities of Fidelity, in substantially the following form:

> Fidelity has an obligation under the policy to fully indemnify BoNYM for any loss of the deed of trust as a result of the HOA sale.

(b) Compensatory and consequently damages in an amount to be proven at the time of trial in an amount in excess of $75,000 for each cause of action;

(c) Punitive damages in an amount to be determined at trial as being sufficient to punish Fidelity for its malicious and oppressive conduct;

(d) An award of costs and reasonable attorneys' fees as permitted by law;

(e) For such other and further relief the Court deems proper.

DATED November 18, 2020.            **AKERMAN LLP**

*/s/ Jamie K. Combs*
ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
MELANIE D. MORGAN, ESQ.
Nevada Bar No. 8215
JAMIE K. COMBS, ESQ.
Nevada Bar No. 13088
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
*Attorneys for The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Holders of the SAMI II Trust 2006-AR7*

10

55256577;1